Seney, J.
This action as presented by the facts as alleged in the pleadings, is one for the marshaling of various liens; the liens as claimed growing out of the acts of the parties as well as by operation of law. Incidentally to the establishment of the various liens, and upon which, if they have any validity in law, the liens, depend, is the question whether the property, or the money arising from the sale of the property, is the property of á co-partnership firm, or is the individual property of the different members composing the firm. While these are probably the only issues tendered by the pleadings, the undisputed material facts in the case, as disclosed by the evidence, present another question arising from equitable principles, not depending upon the doctrine of liens as known to the law, but upon the right of parnership creditors to be first paid out of the partnership property or funds.
From the kind and character of the property, whether it is co-partnership property or not; from the kind and character of the various claim liens, whether they are liens or not; from the lack of averments in the pleading, from the lack of testimony in the case, it has caused the court considerable trouble to arrive at a conclusion, so that exact justice may be done between the parties, that justice to be measured alone by legal and equitable principles. From what was disclosed upon the trial, it appears to a majority of the court there are other undisclosed facts, which, if disclosed, might change the rights of the parties.
*444 Be that as it may, it is the duty of the court to dispose of the case as it is, and not as it might have been.
On the 20th of June, 1890, A. R. Lafferty and E. A. Townley granted unto defendant, W. B. Ely, his heirs or assigns, for a valuable consideration, all the oil and gas in and under certain described premises, together with the exclusive right to enter thereon for the.purpose of drilling and operating for oil, gas or water; to erect', maintain and remove all structures, pipe lines necessary for the production and storage of oil, gas or water, upon the following terms :
“V. B. Ely agrees to drill a well upon said premises within thirty-seven days from this date; should Ely fail to so drill, then this instrument is null and void. Should oil be found in paying quantities upon the premises, Ely agrees to pay to Lafferty and Townley, one-sixth part of all the oil produced and saved from said premises. Should any well or wells produce two hundred or more barrels a day, then Lafferty and Townley should receive one-third of the oil thus produced. All rights under this agreement shall end in twelve years from this date, or as soon as Ely, or his heirs or assigns, have abandoned or cease to operate the same for a period of six months.” (Other conditions are mentioned in the instrument that it is not necessarry to notice.)
On the 26th day of August, 1890, the said W. B. Ely, for a valuable consideration, assigned and transferred, by a written endorsement endorsed thereon, one-third of his interest in said written instrument to the defendant T. H. McConica, and one-third of his interest in said written instrument to the defendant W. B. Chubbuck.
The instrument, with the endorsements thereon, was duly recorded by the recorder of Hancock couuty, Ohio, in a book kept in the recorder’s office for that purpose.
Upon the threshold of the case, and upon which must be built the respective rights of the different parties herein, is the determination of the legal character of this written instrument.
*445 The court held in the case of Harrington et al. v. Wood, 6th C. C. Reports, 330, that the construction to be given to this class of instruments was:
“ That they are not strictly a lease, but a license coupled with a conditional grant, conveying the grantor’s interest in a gas well.”
The Sixth Circuit Court held, in the case The Ohio Oil Co. v. The Toledo, Findlay & Springfield Railroad Co., 4th C. C. Rep. 215:
“That these leases are in the nature of an incorporeal hereditament; that strictly speaking, it is not a right in the land as such, but a right to enter upon the land, to sink wells, and take from underneath the soil, such oil as it may find; to take it from the land, and to render a portion of it to the land owner; the remainder to become its own, to dispose of it as it sees fit.”
The Supreme Court of Ohio, in the case of Brick Company v. Pond, 38 Ohio St. 65, held as follows : “ A, by an agreement in writing, leased to B. all the clay that is good No. 1 fire clay on his land described, for a term of three years, subject to the condition that B. shall mine, or cause to be mined, or pay, for not less than 2,000 tons of clay, every year, and shall pay therefor twenty-five cents per ton for every ton of clay monthly as it is taken away. Held, that this was a contract, which gave B the exclusive right to mine and remove all the good No. 1 fire clay that was on the land, and not a lease of the land itself.”
The only difference between the case at bar, and the one cited from 38 Ohio St., is that in the case at bar, the contract was for all the oil contained in the land; in the 38th Ohio St. it is for all the fire clay contained in the land of a certain quality. We quote from the opinion of Johnson, Judge, as found in 38th Ohio St. 71:
“ The exclusive right to the possession of the land, as far as it was necessary to mine and remove such clay, was granted. This was not an exclusive possession of the whole tract, but *446 only for mining purposes. The ownership of the land, with the right to the possession of the same, subject only to the right of possession for the purpose of mining and removing the clay, was in the owner. This was, therefore, a contract for the privilege of mining and removing the kind of fireclay specified, as distinguished from a lease of the land.”
Does the fact that it was clay, instead of oil, change the character of its mining properties ? It was held in 110 Penn., page 317, as follows :'
“ Petroleum is a mineral substance, obtained from the earth by a process of mining, and lands from which it is obtained, may, with propriety, be called mining lands.”
From these authorities it must be held that the written instrument in the case at bar is not a lease of the land, but simply a contract, coupled with the license or grant to obtain possession of the land for the purpose of the contract. Its sole and only reference to the land, is the license to take possession.
On'the 13th day of April, 1891, the defendants John H. McConica, Wm. B. Ely and W. L. Chubbuek, executed and delivered^ to Sylvester Finch, David E. Batchley and A. J. Ferrell, partners as S. M. Finch & Co., a written instrument, whereby they granted, sold, assigned, transferred and conveyed to Finch & Co. all their interests in the written instrument executed by A. R. Lafifert3>- and E. A. Townley to Wm. B. Ely on the 20th day of June, 1890; as before stated, together with three derricks, three oil wells complete including casing, rods and everthing going to make up a complete outfit to said wells, including three stationary steam-engines, two boilers, four 250 bbl. tanks, 3,500 feet of steam pipe line, and all connections and fittings, and all other personal property belonging to said grantors, now on the said premises herein-before described; also one derrick, one boiler, one engine, one string tubing (1,250 ft.), one string casing (420 ft.); one carpenter rig complete, one strong sucker rod, and one 250 bbl. tank.
*447 The condition contained in said written instrument or grant was:
“ That whereas the said Thomas H. McConica, William B. Ely and Walter L. Chubbuck have, as partners, under the firm-name of McConica, Ely & Chubbuck, executed in such firm-name, and delivered to said S. M. Finch & Co. their certain promissory note, dated April 11,1891, in the sum of two thousand dollars, due and payable on or before the 11th day of April, 1892, and have further agreed that they will operate said wells in a safe and prudent manner, and at the end of each month, render a just account of the expenses of such operation of said wells, including removing property and drilling said wells, and deduct said expense which shall be paid to them, all the balance or net earnings of said wells shall be retained by grantees herein, and applied to the payment and liquidation of said note, and shall be credited on the same each month, as said payments are made.. The oil shall be run to the credit of the grantee. Now, if the said McConica, Ely and Chubbuck, or any of them, their heirs or assigns, shall truly pay or cause to be paid, said promissory note, with interest, when the same shall become due and payable, and shall keep and perform the covenants and agreements above contained on their part to be performed and kept, according to the intent and meaning thereof, then this mortgage shall be void; otherwise to be and remain in full force and virtue in law.”
This instrument in writing was duly recorded as a real estate mortgage, and was duly filed and recorded as a chattel mortgage. The note mentioned and described in this instrument in writing, before its maturity, was duly assigned and transferred by the said S. M. Finch & Co. to the Meridian National Bank, which it now holds, and asks that the instrument in writing securing it, be foreclosed.
After the execution and delivery of this instrument to Finch & Co., Finch Co. took possession of the premises and these various chattels, operated the oil-wells upon said *448 premises, and received, in money, from the sale of the products of these wells more than enough to pay said note, after deducting the expense incidental to the operating of said wells.
The money realized by Finch & Co. in the operation of said wells, was paid by them in a great part to the creditors of the firm of McConica, Ely & Chubbuck; only a small part being paid upon this note. The payment was made with the knowledge and under the express direction of McConica, Ely & Chubbuck.
After this action was commenced, and after this money was realized by Finch & Co., the courtof common pleas appointed a receiver, who since his appointment has been operating said wells, and has in his hands, by virtue of said operation, a large sum of money for distribution.
The Meridian National Bank, under this state of facts, claim a lien upon these oil wells, the chattels connected therewith, and the proceeds arising from the sale of the oil, made by the receiver; have they such a lien ?
So far as this security is concerned, The Meridian National Bank stands in tKe shoes of Finch & Co. If Finch & Co. could not claim a lien by virtue of these facts, neither can The Meridian National Bank. As we have seen from the case cited in the 38th Ohio St., the interest of Thomas H. McConica, William B. Ely and Walter L. Chubbuck, is an interest in the contract, and not an interest in the land. So that this instrument in writing, recorded as a real eatate mortgage, created no lien. Qucere, can this contract be the subject of a chattel mortgage, so as to create a lien? If it can, the condition of it provides that when, with the operation of the oil wells, after deducting expenses, enough money is realized to satisfy this note, the mortgage is void. Enough was realized; hence the security is void by its terms, unless the direction of the firm of McConica, Ely & Chubbuck to apply the money thus realized to other firm debts, changes it. The security is that of Thomas H. McConica, Wm. B. Ely and Walter L. Chubbuck, and not the security of the firm of McCon *449 iea, Ely & Chubbnck. When Finch &Co. consented and applied the money thus realized to other firm creditors, in preference to applying it to their own security, in equity they waived or released their security, upon the plain principle of equity, that their act tends to defeat the other 'creditors. At this point another equitable principle maybe pertinent, although not pleaded; and that is the doctrine of subrogation. The claims that were paid by Finch & Co. in preference to their own, were the claims of McElwaine & Co. and Solomon Funk, which claims were for materials furnished for these oil wells, and which is claimed were prior liens to this lien of Finch & Co., by reason of McElwaine & Co. and Solomon Funk perfecting a mechanic’s lien under the statutes of Ohio. The question thus arises, had they valid mechanic’s liens ? .
In the case of McElwaine & Co., the first item of account is dated August 29, 1890, $475. The second, third and fourth items of account are dated December 11th, $205.55 ; December 13th, $210.31; December 14th, $43.97 ; December 30th, $183.31; January 10th, 1891, $-. This lien was filed for record May 7th, so all these items were furnished, with the exception of the last item, more than four months prior to the filing of the same for record.
In the ease of Solomon Funk, the same condition exists.
Considering the date at which these items were furnished, and the date of the filing of the lien, does the fact that one of the items was furnished within the four months, preserve the lien as to the other items? We think not.
We cite the case of Choteau et al. v. Thompson & Campbell, 2 Ohio St. at page 114. A part of the syllabus of the case reads:
“ But where they are furnished for different purposes (materials), or where there are intervals of time in the account, so long that it can not, with propriety, be called one account, there is not, in the absence of an entire contract, a lien for the whole from the date of the first article furnished. The items *450 in such case will be regarded as forming one, two or more distinct accounts.”
So we hold (a majority of the court), that the Meridian National Bank has no lien, so far as the lien is claimed, by virtue of the mortgage described in the petition.
On the 29th day of April, 1891, the firm of Shaw, Kendall & Co. recovered a judgment before a justice of the peace against the firm of McConica, Ely & Chubbuck, and on the 6th day of May, 1891, they caused a transcript of said judgment to be filed with the clerk of the court, which judgment was assigned to the defendant, The Buckeye Supply Co.
On the 13th day of July, 1891, the Buckeye Supply Co. obtained a judgment in the Court of Common Pleas of Hancock' County, Ohio, against the defendants Thomas H. McConica, William B. Ely and Walter L. Chubbuck, as partners under the firm-name of McConica, Ely & Chubbuck.
On the 6th day of May, 1891, The Buckeye Oil Well Supply Co. recovered a judgment against McKinnis, McConica & Co. before a justice of the peace, and on the 11th day of June, 1891, they caused a transcript to be filed with the clerk of the court; that the defendant Thomas McConica was a member of said firm of McKinnis, McConica & Co., and that the Buckeye Supply Co. is the owner of said judgment.
On the 13th day of July, 1891, The Buckeye Oil Well Supply Co. recovered a judgment against the partnership of Mc-Conica, Ely & Bicknell, by the consideration of the Court of Common Pleas of Hancock County, Ohio; that the Buckeye Supply Co. is the owner of said judgment; that the defendant Thomas McConica, was a member of said partnership firm of McConica, Ely & Bicknell.
Such, in effect, is the claim lieu of the Buckeye Supply Co. Do these facts create a lien ? So far as the property or money in question is concerned, they are either the property of T. H. McConica, Wm. B. Ely and Walter L. Chubbuck, as individuals, or the property or moneys of the co-partnership firm of McConica, Ely & Chubbuck, and a judgment against the *451 firm of McKinnis, McConica & Co., and against the firm of McConica, Ely & Bicknell, does not create a lien upon the property of the firm of McConica, Ely & Chubbuck, or the individual members of this firm, although it may be that a a member of the firm is common to all the firms.
As to the judgments against the firm of McConica, Ely & Chubbuck, they are a lien without levy upon the real estate of the firm in the county. Nothing else, and as we have seen, the firm of McConica, Ely & Chubbuck, or the individuals composing the firm, are not the owners of any real estate; hence we hold that the Buckeye Supply Co. has no lien upon the property, or proceeds from the property, by virtue of this judgment lien.
For the reasons heretofore given, the facts pleaded in the answer and cross-petition of Solomon Funk create no lien in his favor against the property in controversy.
As to the facts alleged in the answer of S. M. Finch, other than the facts alleged, in which he asks that the payments that he made to McElwaine & Co. and Funk be ratified and approved, to-wit: for services rendered while he had charge of the property, they create no lien against the property or its proceeds from the fact alone of such services.
Adams Bros. & Company claim a lien from the following facts:
That on the 22nd day of May, 1891,-they recovered a judgment before a justice of the peace against the partnership firm of McConica, Ely & Chubbuck; that on the 19th day of November, 1891, they filed a transcript of said judgment with the clerk of the court. That on the 3rd day of May, 1891, they recovered three several judgments against the defendants Mc-Conica, Ely & Chubbuck, as partners, before a justice of the peace. That on September 19, 1891, they filed a transcript of each of said judgments with the clerk of the court; that on the 13th day of April, 1892, they caused executions to issue, and the same were levied upon all the premises, and all *452 the propeety, both real and personal, described in the petition.
That on the 10th day of May, 1892, they recovered a judgment against the defendants Thomas H. MoConica and Wm. B. Ely, by the consideration of the Court of Common Pleas of Hancock county; they caused an execution to be issued and levied upon MeConica’s undivided interest in said property, and upon Wm. B. Ely’s undivided interest in said property.
The difference in this claim lien of Adams Bros. & Co. and the Buckeye Supply Co. is this:
In Adams Bros. & Co. there was a levy made ; in the Supply Co. there was no levy. Does this difference create a lien in favor of Adams Bros. & Co. ?
Section 5375 of the Revised Statutes provides :
“Lands and tenements within the county where the judgment is entered, shall be bound for the satisfaction thereof from the first day of the term at which judgment is rendered; but judgments by confession, and judgments rendered at the same term at which the action is commenced, shall bind such land only from the day on which such judgments are rendered; and all other land as well as goods and chattels of the debtor, shall be bound from the time that they are seized in execution.”
Adams Bros. & Co..have no lien by virtue of their levy upon the proceeds arising from the sale of oil in the hands of the receiver, because this oil in the hands of the receiver could not be seized in execution; being in the hands of the receiver, it was already in the possession of the court. They have no lien by virtue of their levy upon the oil wells and the products thereof, because they are held under a contract, and are not lands and tenements ; and the contractual rights under the contract are not goods and chattels, hence could not be seized in execution, As to the derricks and other chattel property connected with the oil wells, a lien could be created, by seizure upon execution, provided in the Adams *453 & Co. case, these derricks and other chattels were the property of the firm of McConica, Ely & Chubbuck, or the property of Thomas H. McConica and Wm. B. Ely, against whom the executions were issued.
The question may be asked, how will you subject this oil lease or contract of McConica, Ely & Chubbuck to the payment of their debts, whether it is the property of the firm, or the property of the individuals composing the firm? This is provided for by section 5464 of the Revised Statutes, which provides :
“When a judgment debtor has not personal or real property subject to levy on execution, sufficient to satisfy the judgment, any equitable interest which he has in real estate, as mortgagor, morgagee or otherwise, or any interest he has in any banking, turnpike, bridge or other stock company, or in money, contract, claim or chose of action, due or to become due to him, or in any judgment or order, or in money, goods or effects, which he has in the possession of any person or body politic or corporate, shall be subject to the payment of the judgment by action."
So we hold that Adams Bros. & Co. have no lien upon the property or moneys in controversy by virtue of their judgment and levy, excepting the derrick and chattels connected with the wells, and this dependent upon whether these derricks and chattels were the property of the firm of McConica, Ely & Chubbuck, or Thomas H. McConica and Wm. B. Ely, at the time of the seizure upon execution.
The Farmers' National Bank of Findlay, Ohio, claim a lien from the following facts :
On the 6th day of February, 1892, the bank recovered a judgment against the defendant Thos. H. McConica,' by the consideration of the Court of Common Pleas of Hancock county, Ohio; execution was duly issued upon the judgment, and levied upon the property described in the petition.
On the 6th day of February, 1892, another judgment was *454 rendered, similar to the above excepting amount; execution issued, and levy made.
On the 2nd of March, 1892, the bank recovered a judgment against the defendant W. L. Chubbuck, by the consideration of the Court of Common Pleas of Hancock county, Ohio ; execution issued and levy made upon all the property in the petition described.
For the reasons given in regard to AdamsBros. & Co.’s claim, this bank has no lien by virtue of its judgment and levy, exceptingon the derrickand chattels connected with the wells, andthis dependent upon whether these derricks and chattels were the property of the defendants Thos. H. McConica and W. L. Chubbuck, at the time of the seizure upon execution.
On the 20th day of April, 1891, the defendant Wm. B. Ely sold and assigned his one-third interest in the oil lease or contract (made by Lafferty and Townley) to one Wm. S. Ely, together with his interest in all oil wells, lines, tanks and machinery now on or pertaining to said lease.
This assignment was duly entered of record upon the same day; although this transfer and sale is absolute upon its face, the pleadings aver it was a pledge or mortgage, given by Wm. B. Ely to Wm. S. Ely to secure him on account of his surety-ship to Wm. B. Ely.
This is not a claim lien, but an absolute sale of an interest in all the property in controversy, which carries with it the proceeds in the hands of the receiver produced from that interest, dependent alone upon the fact whether Wm. B. Ely at the time owned, in his individual right, this interest he sold.
Wm. S. Ely further claims, by virtue of his purchase from Wm. B. Ely, that he is entitled to an accounting from the firm of Finch & Co. for the proceeds of the oil sold by them, in excess of the sum of money that was required to pay the note now held by the Meridian National Bank. The product of the oil wells that-was placed in the hands of Finch & Co. by the individuals composing the firm of McConica, Ely & Chub- *455 buck, by virtue of the so-called chattel mortgage, was first a pledge by the individuals composing this firm, to the extent of the payment of this note. In this relation they were the pledgees of the property or product, andas such were responsible in that relation. They' still retaining possession of the property and its product after this relation terminated, and being put in possession originally by the. individuals composing the firm of McConica, Ely & Chubbuck, which was known to Wm. S. Ely, afier the relation of pledgee terminated, they then bore the relation to the individuals composing the firm of McConiea, Ely & Chubbuck, of agent; and paying the money out under their direction, and Wm. S. Ely permitting it to be,done, he is now estopped from claiming that Finch & Co. should account to him; his accounting for this transaction, if he is entitled to any, must be with Wm. B. Ely, from whom he purchased.
The answer of Isaac Davis claims an interest in the property and the proceeds, through an assignment by Wm. S. Ely to him of the undivided one-third interest that he obtained from Wm. S. Ely, to protect Davis in bis suretyship for Wm. S. Ely.
Disinterest depends, first, whether Wm. S. Ely has any interest; and second, by his pleading, it is very doubtful if he pleads facts sufficient to create any interest; the defect might be supplied by evidence, but we have none.
L. Walcott claims a lien from the following facts:
“By virtue of the same judgments set forth in the answer and cross-petition of the Buckeye Supply Co.” As before stated, these judgments constitute no lien. In addition to this, “on the 29th day of October, 1891, for the purpose of securing the payment of these judgments, Thos. H. McConica assigned and transferred to Walcott all his interest in the leasehold and property connected therewith, mentioned and described in the petition.” The transfer was made to Walcott, he being the treasurer of the Buckeye Supply Co., for the use and benefit of the Buckeye Supply Co., and no other party. That he, *456 Walcott, is the sole owner of the interest of the said Thomas H. McConica in the property, subject to the amount that may be required to pay the partnership debts of the firm of McConica, Ely & Chubbuck.
This pleading of fact constitutes no cause of action. For even if McConica was the absolute owner of the interest he sold, the sale inured to the benefit of the Buckeye Supply Co., and Walcott, the answering defendant, has no interest in it.
As we have seen, none of the parties to the action have any liens upon this license or contract, which carries with it the oil wells and the product therefrom, by virtue of any mortgage, by virtue of any judgment or levies, or by virtue of any mechanic’s lien.
Under the pleadings and the evidence introduced without objection, we treat the action as two-fold; first — the marshaling of liens as to the derrick and other chattels connected with the wells; and second, as to the oil wells and products therefrom, as an action under section 5464, of the Revised Statutes, to subject the rights of the debtor under this license or contract, to the payment of his or their debts. Thus treating the case as to the oil wells and the products therefrom, the interest in the proceeds thereof are determined upon equitable principles. All creditors of a class share pro rata, without priority; partnership assets are first subject to the payment of partnership debts; individual assets are first subject to the payment of individual debts.
If we concede that the co-partnership firm of McConica, Ely & Chubbuck owned this license or contract, together with all the chattels connected therewith, at the start, on the 20th day of April, 1891, a member of the firm, Wm. B. Ely, sold his interest to Wm. S. Ely. This, at common law, dissolved the firm. We have no data, either in the pleadings or evidence, to determine the substantial effect of it.
If the law governing mining properties is applicable to the drilling for oil, and which some courts of recognized distinction and ability hold — then a co-partnership firm for drilling *457 for oil is governed by rules of law entirely different from rules of law governing an ordinary partnership. We have no data, either in the pleadings or evidence, to make the application of the law governing mining.
So the question is, is the property in controversy the property of the co-partnership firm of McConiea, Ely & Chub-buck, or is it the individual property of Thos. H. McConiea, Wm. B. Ely and W. L. Chubbuck? So-far as the respective rights of creditors are concerned, to hold it partnership property, there must be a partnership in fact. This partnership in fact, is determined, and depends upon the intention of the parties sought to be charged as partners. This intention is formed by the acts of the parties. What were those acts?
The license or contract appears of record (and the law of Ohio requires it to be recorded), in the name of Thos. H. McConiea one-third, Wm. B. Ely one-third, and W. L. Chub-buck one-third.
On the 13th day of April, 1891, Thos. H. McConiea, Wm. B. Ely and Walter L. Chubbuck, as grantors, conveyed to 8. M. Finch & Co. all the property in controversy, to secure a note executed by the firm of McConiea, Ely & Chubbuck. This instrument was recorded as a real estate mortgage and chattel mortgage, and in it they claimed to own the property as individuals. It will be noticed that it is not a conveyance by the firm.
On the same day Thomas H. McConiea, Wm. B. Ely and Walter L. Clubbuck, grantors, conveyed to S. M. Finch & Co. all the property in controversy, to secure another note executed by the firm of McConiea, Ely & Chubbuck. This instrument was recorded as a real estate mortgage and chattel mortgage, and in it they claim to own the property as individuals.
It will be noticed that it is not a conveyance by the firm.
On April 20, 1891, Wm. B. Ely transferred and sold to Wm. S. Ely his one-third interest in all the property *458 in controversy. ' This was entered of record as the law required.
On April 20, 1891, Thos. H. McConica transferred and sold to David T. Davis an equal undivided one-third in all the property in controversy. This was entered of record as the law required.
On April 22, 1891, W. L. Chubbuck, transferred and assigned to J. B. McElwaine & Co. the undivided one-third interest in all the property in controversy. This was entered of record as the law required.
Wm. B; Ely testifies :
“We agreed to drill wells on it and develop it. Each one of us to pay our third interest in the fund, and draw our oil separately. Each one raising his one-third. The oil was sold to the Buckeye Pipe Line Co on division run orders. Each one drew his oil when he wanted it. During the time that we were putting down the wells, each one of us did pay each his own part as long as each could from his own resources. No, sir; not considered a firm. When we started it was the understanding of all of us, especial understanding, there would be no firm about it.
“Each one would draw his oil. I kept the .books in each one’s name individually, and made statements to each one individually. The money in bank came in this way : I would ask McConica or Chubbuck; they would give me a check; they had their own bank account, and I asked them to give me a check. If we had any notes or bills, or anything of the kind we had to pay, they would give me a check ; sometimes for a third of the note, or something that way. Sometimes they would turn over what they had received from the Buckeye Pipe Line Co. for oil sold. They would turn me over that check, which I would put in the bank, and check it out.”
It was conceded on the trial by all parties, that each one of the three received their own orders, and sold their oil separately.
*459 Mr. Chubbuck testifies :
“It was understood that we would take leases together, and become partners in the business and operate. (This amounts to nothing; his understanding is nothing; facts upon which he based his understanding is what proves something.) We deposited sometimes individually to the firm credit, and sometimes we checked out the individuals we owed for firm labor. Whenever there was, any bills to be paid, or any money necessary to carry on the business, each one undertook to get one-third of it from his own resources, if there was no company fund in the bank. Each one was to get his own oil each one was to draw his own oil.”
Thos. H. McConica testifies :
“We began taking'leases together; we never made any firm arrangements, excepting each one had a third interest in what the company required. We didn’t make any partnership agreement. I don’t know that we ever really adopted a name.”
These are in substance the material facts (excepting two others which we shall notice hereafter) that are offered in evidence tending to prove the intention on' the-part of these-parties to become partners. To a majority of the court this falls far short of proving such relationship. But, on the contrary, it proved beyond-a question that they were tenantsin common. It is urged that the fact that these parties, under a firm name, bought property to be. used in connection with the license or contract, and gave notes in the same firm name to pay for it, charges-them as partners. This is no doubt true as to the parties that dealt with them in that relation, but it is not because they area partnership in fad, but because by the law of estoppel, they would be estopped from denying that relationship. But as to all other parties, the question is, was there a partnership in fad. It is further urged from the fact that the property thus bought in the firm name was used in enhancing the value off the license or contract.
*460 Equity should give the property to the parties who by their property increased its value. Under certain facts and circumstances, equity would so decree ; but in the ease at bar, those facts and circumstances that would entitle the parties to such relief, are neither pleaded, nor attempted to be proven.
So the majority of the court hold that all the chattels connected with these wells, of every description, as described in the petition, together with the oil wells and the product therefrom, including the moneys in the hands of the receiver, and that may come to his hands, together with all the rights and privileges under this license or contract, is the property of Thomas H. McConica, Wm. B. Ely and W. L. Chubbuck, as tenants in common, each one-third, and the court will so decree.
That out of the proceeds in the hands of the Receiver, or that may come to his hands, together with the proceeds arising from the sale of the license or contract, including all oil wells and all chattels connected therewith, there be paid :
First — -The taxes, if any.
Second — All costs of this action, which shall include the stenographer’s fees, which fees shall include the transcribing in this court of the short-hand notes into long-hand, and the copying of the opinion.
Third — Of the balance of the fund, one-third should be set apart for Thos. H. McConnica, one-third should be set apart for Wm. B. Ely, and one-third should be set aside for W. L. Chubbuck.
Out of the one-third to Thomas H. McConnica thus set apart, pay:
1st. — Farmers’ National Bank (two judgments) óf date Feb. 6, 1892, and one-half of the judgment in favor of Adams Bros. & Co. of date of May 10, 1892, against Thos. H. McConica and Wm. B. Ely, without priority, pro rata, figuring interest to this date, July 16, 1894.
2nd. Meridian National Bank’s judgment against McCon *461 ica, Ely & Chubbuck, Buckeye Supply Co’s judgments against McConica, Ely & Chubbuck, dated April 29, 1891, July 13, 1891; E. M. Finch’s claim for services against McConica; Ely & Chubbuck, Adams Bros. & Co.; judgment against McConica, Ely & Chubbuck dated May 22, 1891, May 5, 1891, and one half of the judgment in favor of Adams Bros. & Co. against Thos. H. McConica, Wm. B. Ely, dated May 10, 1892, without priority, pro rata, figuring decree to this date July 16, 1894.
3rd. Balance, if any, to Thos. H. McConica.
Out of the one-third of Wm. B. Ely thus set apart, pay:
1st. To Isaac Davis, the amount paid b.y him for Wm. S. Ely, figuring interest to .this date, July 16, 1894.
2nd. To Wm. S. Ely, the amount paid by him for Wm. B. Ely, figuring interest to this date, July 16, 1894, less the amount paid Isaac Davis, as above.
3rd. One-half of the judgment in favor of Adams Bros. & Co. against Thos. H. McConica and Wm. B. Ely, figuring interest to this date, July 16, 1894.
4th. Meridian National Bank judgment against McConica, Ely & Chubbuck, Buckeye Supply Co. judgments against McConica, Ely & Chubbuck, dated April 29, 1891, and July 13, 1891. E. M. Finch’s claim for services against McConica, Ely & Chubbuck, Adams Bros. & Co. judgment against Mc-Conica, Ely & Chubbuck, dated May 22, 1891, and May 5, 1891; and one-half of the judgment in favor of Adams Bros. & Co., against Thos. A. McConica and Wm. B. Ely, dated May 10th, 1892, without priority, pro rata, figuring interest to this date, July 16, 1894.
5th. Balance, if any, to Wm. B. Ely.
Out of the one-third of W. L. Chubbuck thus set apart pay;
1st. The Farmers’ National Bank, judgment against W. L. Chubbuck, dated March 2, 1892, figuring interest to this date, July 16, 1894.
John Poe and W. H. McElwaine, for plaintiff.
Ira C. Tabor, for the Buckeye Supply Co. and J. L. Wolcott.
J. Frank Axline, for Finch & Co.
W. H. McElwaine, for Adams Bros. & Co.
A. & F. P. Blackford, for Farmer’s National Bank.
Geo. A. Phelps, and Duncan & Duncan, for Wm. B. and Wm. S. Ely and Isaac Davis.
Theodore Totten, for Solomon Funk.
2nd. The Meridian National Bank, judgment against Mc-Conica, Ely & Chubbuck; The Buckeye Supply Co., judgment against McConiea, Ely & Chubbuck, dated April 29, 1891; E. M. Finch’s claim for services against McConiea, Ely & Chubbuck; Adams Bros. & Co.’s claim against McConiea, Ely & Chubbuck, dated May 22, 1891, and May 5, 1891, without priority, pro rata, figuring interest to this date, July 16, 1894.
3rd. Balance, if any, to W. L. Chubbuck.
The cross-petition of Wm. S. Ely, so far as the claim against Finch & Co-, is concerned, is dismissed. The cross-petition of the defendant J. L. Wolcott, is dismissed.
The cross-petition of the defendant The Buckeye Supply Co., so far as the judgment against McKinnis, McConiea & Co., dated May 6, 1891, and the judgment against McConiea, Ely & Bicknell, July 13, 1891, are concerned, is dismissed.
From this distribution, counsel can draft a decree, adjusting the priority of liens.
We will appoint W. H. Kinder to prepare the decree in accordance with this opinion, and will allow him a fee of $25.00, to be taxed and paid as part of the costs.
Moore, J., concurs, and Day, J., dissents.